Thank you, Your Honor. Next case is Tye Plastic Bags Industries v. United States Polyethylene Retail Carrier Bag Committee, 2014-12-37. Ms. Chen. Yes. Good morning, Your Honors. May it please the Court, my name is Irene Chen and I'm here on behalf of Pellant, Tye Plastic Bags Industries, Inc., Master Packaging, and Intiplast Group, Ltd. As we demonstrated in our briefs, commerce's denial of TPBI's reported blue corner rebate adjustment to its general and administrative expense was not supported by substantial evidence or in accordance with law. Now this error in turn rendered commerce's dumping margin for TPBI unsupported by the evidence and not in accordance with law. Now why does this all matter? Why does their denial of the blue corner rebate adjustment matter in terms of the dumping margin calculation? Well commerce stated in the final results that TPBI could have claimed a duty drawback adjustment according to the statute but it did not do so and the evidence didn't mandate such an adjustment. Well for duty drawbacks, the way that it works in a dumping margin is when the home market price, when the foreign producer imports products that are subject to import duties, it's reasonable to assume that those duties are included in the home market price, which is in turn going to be compared to the U.S. price. Now for a duty drawback, in some situations, the foreign producer will be able to claim a rebate of those imports. I may be confused, but I don't understand this case having anything to do with duty drawbacks. Am I wrong? Isn't that sort of that errant sentence that commerce included that said, well maybe you can get some love under the duty drawback provision even if you can't get it here, but that's not actually what was decided by commerce and nor is it on appeal to us. Isn't that correct? Well that's correct. I'm giving the court background on this issue. Why don't we stick to what's actually on appeal, which is, is there substantial evidence for commerce's determination that a rebate, which I don't think anybody denies, is given on the basis of exportation is nonetheless the cost of production overall? Yes. Well, to give the court some background on why duty drawback does not apply here, because it does, it's a material issue in that commerce, as the court stated, stated that this is what they should have claimed for the adjustment. So with duty drawback, if the import duties are embedded in the normal value, the foreign market price. We disagree. We're not talking about duty drawback. Right. So can you get, commerce made no decisions about duty drawback. There's nothing on appeal to us about duty drawback. So focus on the only issue that is on appeal, which is whether or not there's substantial evidence in this record for commerce's determination about the export price rebate. Well, we would submit that there is not. The point here is that there is some imbalance. By denying the adjustment, the offset to G&A expense for duties that have been rebated to TPBI, TPBI paid a compensation fee to its raw material suppliers for the import duties they incurred upon importing the raw material product into Thailand. And in turn, when they exported that product to the U.S., they got a rebate. So in essence, their cost of production actually went down. And the appellees talk about how there's some distinction between cost of production, but it's one cost of production. The cost of production didn't go down for the domestically sold product, right? Well, yes. But there's just one cost of production. Is the answer yes or no? It did not go down for the domestic product. Right. But the key here is that there's only one cost of production. There's one cost of production for domestically sold and exported product. So for the domestically sold product, where they pay the import duties or the compensation fee, those products are priced accordingly. That's embedded in that. In the cost of production analysis, it's to try to figure out what the normal value is of the domestically sold product, right? Well, if there's a cost test in certain situations where commerce suspects that the home market product is being sold under the cost of production, they will build a cost of production. They will compile the cost of production of making the home market product. So when you look at that, that includes the cost of materials and G&A expense along with some other expenses. So that home market cost of production should not include exported goods upon which they've received a rebate. Why? Because it's inflated the home market value. Because as I was saying about duty drawback, the reason why the statute talks about making an upward adjustment to export price is because there's a symmetry here. They have to compensate for the fact that... I guess what I'm wondering is why is it wrong for us to say that the rebate program doesn't touch or doesn't inflate the home market price, but it does deeply inflate the export price? And that's what's going on. Well, because the cost of production is just one cost of production, whether it's for home market or exported goods. When commerce compares export price to home market, export price is just that. It's just what the price they're charging to export these goods to the U.S. So there's no mechanism under duty drawback, as you stated. So there needs to be a secondary adjustment. What is that secondary adjustment? Otherwise, you have a home market cost of production that's artificially high. You have these duties in there that have been rebated to the Thai producer that have not been pulled out. But I think the problem, though, is the standard of review. I mean, you know, you make a very logical case, but we have to say, is there substantial evidence for commerce's determination here? And why is it enough that they say these rebates may well have implicated something of value to the company, but they're nonetheless not related to production costs? And production costs are all we're allowed to consider. These rebates are related solely to a different act, which is exportation. And exportation-related expenses are not part of production costs. Well, respectfully, we would disagree that it's not related to production costs. And in fact, in a prior case, commerce stated that there is only one cost of production, whether it's domestically sold goods or exported goods. When they buy the resin from these raw material suppliers, they're just buying a whole lot of them. So some are going to go into domestically produced, some are going to... In cost of production shipping to the U.S., for example, suppose that you produce all the goods, here are your goods, boom. Now you're going to pay a freight of 10 cents on the good in order to get it shipped on a giant ship that's going to sail it to the U.S. Is that shipping cost you're going to pay fairly characterized as cost of production? If they cost incurred only in the exportation, is that part of cost of production? Well, here's the thing. The statute does account for differences in freight, shipping, taxation, to essentially create a symmetry between the export price and the home market price. And so in a situation where you have an importer who's also an exporter, duty drawback takes care of that. But in this case, TPBI is not the importer of the goods upon which it received the export rebates. So that's the question. Then you have to go to the next level. There still needs to be an adjustment. I guess the problem is you have identified in the duty drawback setting something that works to the disadvantage of your client because he's not both importer and exporter. But you're asking us to morph commerce's, what seems like a reasonable determination on these facts, namely the expense incurred or the benefit gained by virtue of exportation is simply not a part of the cost of production. It may result in unfairness to your client in this case because this other provision doesn't let them garner some benefit. But I'm a little nervous about messing around with what would otherwise reasonably be encapsulated in the notion of production costs. Like you admit, freight costs to export is not part of production costs. In fact, they're separately called out. Well, Your Honor. The export tax or in this case export rebate feels a lot more like something related to freight and shipping related to purely export. Here's the thing. With duty drawback, it's a dollar to dollar adjustment. So it's a very direct, it's a material adjustment. In this case, it's not so much that it's export. It's almost like other income. As the cases we cited with grant income, commissions, dividends, it's sort of this pot of other income that needs to reduce the cost of production. We cited cases where- Why doesn't it just reduce the cost of shipping? Why doesn't it simply reduce the cost of shipping? You've got to pay freight to get it over there. How come the rebate isn't just offsetting that cost? Why is it suddenly a part of the production cost? Because it matters because we're comparing a home market price to an export price. So the statute takes that very seriously. They want a symmetrical price to price comparison that's apples to apples as much as possible. Now with cost of production, in light walled rectangular pipe in two for Turkey, Commerce says that the department uniformly calculates a single cost of production which incorporates the cost of producing both exported and domestically sold finished product. Now I understand Your Honor's nervousness with stating that, okay, well this is relating to export, but think of it more as other income. It's an offset to G and A expense which is not- You never know, you'll charge more to be nervous. It's not- If you wanted to save time, you can finish your thought or- Sure. Sure, I would just finish my thought. It's not a dollar to dollar adjustment. We're talking about an offset to overhead of the company as a whole. Thank you. You can save the rest of your time. And the appellee argument is split between Mr. Madras for the government. Yes, Your Honor. And you're going to take 11 minutes. Yes, Your Honor. And you're going to watch the clock for the benefit of your colleague Mr. Schneider. I will, Your Honor. All right. May it please the court, as the appellant noted, the appellant raises one issue in this appeal. Was the trial court correct in sustaining Commerce's decision to exclude blue corner rebate revenue from the appellant's cost of production? Or more specifically, was Commerce reasonable in deciding that the appellant's calculation of G&A expenses should not be offset by blue corner rebate revenue? Now, the overall framework of this case is calculation of normal value. And as Your Honors are aware, under the below cost test, Commerce has the ability to disregard sales if they're below cost of production. That's what led to this case because the appellant's file or Commerce requested a Section D questionnaire and the appellant responded. And that's where we get the underlying facts that are critical to this case. So what happens is, as the appellant noted, is the appellant purchases residue from one of its suppliers. The domestic suppliers incur an import duty. They in turn charge a compensation fee to the appellant for those import duties.  And what that means is that, upon export, the appellants can use tax certificates that they receive from paying those compensation fees. They can provide these tax certificates to the Thai government upon export. They only get the blue corner rebates upon export. And that's critical because, as the court noted, there is only one cost of production here and it applies in both markets because we're talking about two markets here, the home market and the export. Is the rebate equal to the amount of the compensation fee? Yes, Your Honor, because the purpose is to promote exportation. And so it covers those... Would you say that this is a very, very close cousin or maybe even almost identical to a duty drawback adjustment? It's a similar situation. Now, I would note, as the court noted, that the appellants don't note in their brief and don't argue that they sought a duty drawback under the statute, that they sought a rebate. What would have happened if they had? So they would have needed to submit paperwork essentially tracing together these various steps that I talked about. They would have to show the link between the compensation fee and the import duties. It would largely be an issue of providing receipts. But in Commerce's view, just the fact that there's this intervening player, the supplier that's actually importing the resin into Thailand, that doesn't somehow break the chain and then deny Thai Plastic Bags the opportunity for a duty drawback adjustment. Is that correct? Yes, Your Honor, in the sense that there's only one situation where Commerce has created a carve-out, and that's under the duty drawback statute. There's nothing in that statute that prohibits the appellant, in this case, from having sought a duty drawback. Now, as Your Honor noted, that wasn't... What I want to understand is what is Commerce's position? Not the fact that someone could request it. Of course they can request it, but what would Commerce do in response to that request? Is Commerce's understanding, interpretation, position of the statute on this score amenable to actually granting that adjustment? Or does Commerce have some other view where it rules that, no, forget it. You weren't the actual direct importer of the resin, so you can't have the adjustment. Now, obviously those are different facts than what's before us, but there's nothing in the statute that prohibits the appellant seeking a duty drawback. But that wasn't an issue... Okay. Now, you went back. Do you understand? Do I need to ask my question again to make sure that I get an answer on it? I mean, if you want to say Commerce today has no position, that we reserve the right to completely deny someone in Type 5 to VAG's position a duty drawback adjustment by virtue of the fact that there happened to be some intervening supplier that was actually importing the resin, then go ahead and tell me that. But don't tell me again that, oh, okay, of course anybody can request it, and we'll accept the request. I apologize, Your Honor. Commerce doesn't have a... I think what Your Honor is asking is, is there an absolute position in Commerce's view that in these circumstances with an importer in between, that they could not seek a duty drawback, and that is not Commerce's position. This would be a very different case had the appellant sought a duty drawback and provided paperwork showing the link between the compensation fees and the import duties. And that is something that was recognized in the prior review in this case. So this exact issue came up in the prior administrative review. Commerce noted that the appropriate adjustment in this circumstance, if one were to be made, would be to increase the appellant's U.S. price under this statute. Now, to answer Your Honor's point, Commerce specifically said, we only make such adjustments under the duty drawback statute where there is a sufficient link between the import duty or taxes and the rebate, and whether there are sufficient imports of the imported material to account for the duty drawback received. So the point being that appellant didn't make any effort to do this, so we don't have those facts before us. They didn't seek a duty drawback. But Commerce doesn't have a view that it's prohibited that they could seek one, and the statute doesn't prohibit them from seeking one. But it was never an issue in the case because they never sought one, period. What they're trying to do is shoehorn this situation into the duty drawback statute. And as Your Honor pointed out, it's a different circumstance. The duty drawback statute deals with an adjustment to export price. Here what they're trying to do is say, well, our cost of production should be offset. Our G&A expenses should be offset. And there's no statute that allows them to do that. And moreover, I think it's critical to note that the appellants never even argue that the blue corner rebates at issue are G&A, that they're general and administrative expenses. They never argue that in their brief. And that's what we're talking about here. They're arguing, they never say it's part of G&A, but they argue it should be offset from it. And considering the standard of review applicable here, whether Commerce made a reasonable determination, it strains reason to say that they didn't when there's no statute saying they have to do something like this. There's no statute that speaks to what the appellant is asking them to do. Does that answer Your Honor's question? Kind of. So that's the bottom line issue. And I would also stress that there is one cost of production applicable in this case. So in the circumstance where goods are sold domestically, that is going to lead to an increase in home market price and normal value because they have to recoup that cost. The cost has to be recouped because there's no rebate. The principle at play here, these blue corner rebates only apply upon exportation. And so the appropriate adjustment, if one were to be made, would be to U.S. price, not to reducing cost of production. Just to touch on a couple more issues, the cases that are relied upon by the appellant in their briefs just deal with different circumstances. Now, they rely upon cases that concern government grants. Those situations are quite different than what we have here because the cases that are cited concern what we typically think of as subsidies or government grants, those that might be used for the benefit of the company as a whole or to free up company funds to be used elsewhere in the business. They're not tied to subsequent actions. Here you only get the rebate if you export your goods. And so those cases, from our perspective, just aren't on point. I would also note that this is nothing new. Commerce addressed this exact same issue in the prior review and has been consistent on this point. And not only that, in other reviews as well, commerce has consistently refused to allow adjustments to cost calculations for revenue derived from export promotion programs. Just as a couple examples, commerce held this in the certain hot rolled carbon steel flat products from India review and also from the certain frozen and canned warm water shrimp from Brazil review. What about the U.S. steel case? Right. So and that's a case that's heavily relied upon by the appellant and we, our perspective is it's distinguishable for a lot of reasons. Now, we would note this is an old case. It's from 1998, so it's prior to the Uruguay round. That case dealt with a situation where normal value was based on third party sales, so sales from Argentina to China. And the issue there was not import duties like we have here. The issue there was value added taxes. So essentially what happened in that case is that Argentine VAT type taxes. Connected to exports though, right? Well, yes. But the distinction in that case from here is the fact that there was a mismatch that was corrected via statute after the case was decided. So in that case, what was going on is that third country prices between China, Argentina and China excluded these VAT taxes. But the cost of production included them. And so what Congress did to correct this imbalance happened in 19 U.S.C. section 1677B subpart B3 where they provided for a reduction in cost of production for these VAT taxes. And it was to correct an imbalance. We don't have that situation here. There is no imbalance. And arguably doing what the appellants are asking would create an imbalance because as I noted before, in sales to the home market, those prices are increased because the import duties are incurred but there's no rebate. So that cost has to be recouped through the price. But by making a reduction to cost of production, that affects both markets. So you arguably create a distortion in that circumstance. In U.S. Steel, the statute corrected an imbalance. But aside from that, the case dealt with very different facts because it dealt with the U.S. Steel and also because it dealt with this third party situation. And the statute is not applicable to these circumstances. You don't think there's an imbalance in the facts here? No, because I think the big distinction. You know, that's why the duty drawback adjustment statute was written, right? Because there was a perceived imbalance distortion. And that's what the statute was designed to correct. Right, right. And, you know, you even in fact admitted that this fact pattern is very, very similar to what's going on with duty drawback adjustments. Right. That's the statute. Congress created this carve out to allow for adjustments in price. And I think in this situation, the appellants could have sought a duty drawback. We don't dispute that they couldn't have. They didn't under these facts. That creates an adjustment to U.S. price if these links are shown. And if there's going to be a method of correcting situations like this, it's through the statute that exists, because, again, the rebates only affect export. So it makes sense to adjust U.S. price, not to adjust cost of production, which affects both markets. But the appellants just simply didn't seek one. So it's not under review before the court. Thank you, Mr. Madrigal. Do you want to yield the floor to Mr. Heidemann? Yes, Your Honor. And I thank you for your time. Who has four minutes. Thank you and good morning, Your Honors. Your Honors, the rebate of import duties has to be handled under the statute as a price adjustment under 1677A. It can't be handled as a cost adjustment to normal value under 1677B. And so the question is, for this sort of program, where is the potential imbalance? Where is the distortion? And the statute recognizes under the duty drawback provision that when you have a rebate of import duties only on the export side, it tends to lower your export prices. And when you're comparing that to a home market price that is priced to capture the full cost of production, including the import duties, that's where the imbalance is. And so the way you remedy that imbalance is you adjust the price side, you increase the export price. Everything's stated on an apples-to-apples basis. Okay. But they didn't request that adjustment. They didn't request an increase to the export price. I certainly think they could have. At the very, I mean, I know that they're arguing it would have been impossible to do so. But frankly, to preserve that argument, I think they at least had to try. They had to make their case to Commerce. And if Commerce was unsatisfied, deny it. Well, they could certainly appeal that. But they didn't even try. What they're doing instead is seeking to reduce their costs. Instead of. But if Commerce said, no, you can't get it on duty drawback because you're not both the importer or exporter, would that have changed anything that you're arguing to us today? I'm not sure that it would. I mean, that's not our case. I think we don't get to sit here and sort of figure out equity. We only get to apply law. Well, you want to get the only issue in front of us is, is this or is this not fairly characterized as a cost of production? And in fact, that's not even the issue. The issue is, did Congress make an unreasonable decision when they said it wasn't fairly characterized as a cost of production? No, but Your Honor, first of all, by statute, it has to be treated as a price adjustment under 1677A. And there's no there's no distortion here that needs to be corrected. Ms. Chen. No, but if they had sought it as a price adjustment on U.S. price and been denied, we might have to decide whether that decision was wrong or not. But that wouldn't give us a basis to muck around with what is defined as a production cost or not under this statute. I agree. And regardless of what Congress would have done in terms of that price adjustment, what they did in terms of denying a cost adjustment is correct. Ms. Chen acknowledged that there's no refund of these import duties on their home market sales. And she acknowledged that those home market prices are not reduced thereby. In other words, if they're spending $100 a ton on resin, maybe they're getting $20 a ton when they export, but they're still incurring the full $100 cost on their home market sales and they have to price it accordingly. Those home market prices are not reduced. It would be a miss. So the cost of production that you're comparing it to in these sales below cost comparisons also should capture the full amount of that resin, including the import duties. It's already stated on an apples to apples basis. If one includes if one is not reduced by the BCR revenues, then the other shouldn't be reduced either. Everything already is on an apples to apples basis. If you were to make the adjustment that appellants are seeking, then there would be a distortion. There'd be a mismatch because you'd be comparing a home market price, which is not reduced, to a cost of production that has been reduced now by these revenues. And that is distortive. Now, Judge Chen asked about the U.S. Steel case. I mean, that's a very different situation because you have normal value. But sometimes you have in the dumping calculations that the home market is non-viable. You have to go to third country sales as the comparison market. Essentially, you're comparing U.S. prices to third country prices. They're all export sales involved in the dumping calculations. And if you're comparing third country sales to cost of production, sometimes they're going to be export incentives buried in those third country sales. And so if if the third country sales are reduced by the rebate of those taxes, you're comparing it to a cost which includes those taxes. That's that's a mismatch. And that's that's distortive. And U.S. Steel's affirmed Commerce's decision to reduce cost of production by those import duties that were rebated upon export. That's now captured by the statute says now specifically that that's a reduction that is to be made. But it's only made when the comparison market is based on third country sales. That's not the situation here. This is sort of the reverse of U.S. Steel. In that case, there really was a mismatch at distortion that required an adjustment. Here, there's not. Everything's already stated on an apples to apples basis. Thank you, Mr. Schneiderman. As you see, your red light is on. Thank you. We will hear rebuttal from Ms. Chen, who has almost four minutes if she needs it. Thank you. I respectfully disagree with Mr. Schneiderman. The cost of production is overstated when you don't make that adjustment for the export duties that were rebated and brought back into the company. Those are company revenues. That is other income to the company. So if you don't adjust the COP, you may have a situation where certain home market sales actually fail the cost test. You have inflated COP and home market sales that have been priced by the company based on their overall finances. So we'd say that this is actually distortive. It is not an apples to apples comparison. Now, as far as duty drawback is concerned, TPBI, they knew they could not qualify for duty drawback. They don't have the customs declaration forms. They don't have the documentation required to tie the imports of resin and the exports of their product. And they knew that. They had made duty drawback claims for other exports. Now, in this case, Commerce states that, well, it's either duty drawback or nothing. However, in the pipe and tube case from Turkey, when an export had actually not incurred the import duties, basically, according to the foreign government's program, they essentially it was a wash. They didn't pay the import duties and they didn't get the export duties rebated. There was no no cost to them. And in that case, Commerce actually forced them to redo their reporting to Commerce. They know you still have to include the import duties that you arguably, ideally, hypothetically would have paid in your cost of production. So to say that, well, when the company's entitled to export rebates, no, this has nothing to do with cost of production, but in a situation where the company actually never paid the import duties because of the way the program was structured, no, you still have to include those in the cost of production. To admit respectfully, this is a situation where Commerce, as it does with other cases, you drive the normal value as high as possible. So to drive a higher margin to the company, this is fundamentally unfair. The statute recognizes there is a distortion. So for a situation where an importer is also an exporter, you have a duty drawback adjustment. When that's not available, as it's not available to TPPI because it is not the importer and exporter, there should be another adjustment. Commerce has done that in the past with grant revenue, dividends, commissions, government income. It becomes a situation where there is no distinction between import-export duties rebated and other income. So we would submit that this court remand this case back to Commerce to make that required adjustment. Thank you. Thank you. Ms. Chen will take the case under review.